IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

DANNY S. WELLMAN,
Administrator of the Estate of
JARRED S. WELLMAN,

      Plaintiffs,

v.             CIVIL ACTION NO.   5:15-cv-03010

FORD MOTOR COMPANY and
RAMEY AUTOMOTIVE GROUP, INC.,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Plaintiff's *Motion to Remand* (Document 7), the *Memorandum of Law in Support of Plaintiff's Motion to Remand* (Document 9), Defendant *Ford Motor Company's Opposition to Plaintiff's Motion to Remand* (Document 19), and *Plaintiff's Reply to Ford Motor Company's Opposition to Plaintiff's Motion to Remand* (Document 20), and all exhibits attached therewith.   For the reasons that follow, the Court finds that the Plaintiff's motion should be granted.

**FACTUAL AND PROCEDURAL HISTORY**

The Plaintiff, Danny S. Wellman, administrator of the estate of his son, Jared S. Wellman, brought suit in the Circuit Court of Wyoming County, West Virginia, on February 5, 2014, against the Defendants, (1) Ford Motor Company, and (2) Ramey Automotive Group, Inc., (Ramey). (*See Compl.*, at 1-2.)   He alleges that his son was killed in a single-car roll-over accident on March

4, 2013, while operating a 2002 Ford Explorer, VIN: 1FMZU67E72UB80374 that he (Danny Wellman) purchased on or about July 5, 2009, from McArthur Auto Body & Repair Shop in Beckley, WV. (*Id.* at 4.) Specifically, the Plaintiff claims that the 2002 Ford Explorer was defectively designed and manufactured, and he alleges that his son died "due to the failure of the 2002 Ford Explorer's driver's side occupant restraint system, its lack of crashworthiness and other defects," and from other design and manufacturing issues. (*Id.* at 5, 9-11.)

The complaint contains claims against both Defendants for (i) strict product liability and (ii) negligence (*Id.* at 8-19, 21-29), and "breach of its contracts and breach of its express and implied warranties" against Ford only. (*Id.* at 20.) He seeks compensatory damages, including "pecuniary losses and expenses incurred" past, present, and future, for the estate based on wrongful death, and also seeks "the imposition of punitive damages." (*Id.* at 14, 19, 21, 26, and 30.)

Defendant Ford timely filed a *Notice of Removal* (Document 1) on March 12, 2015.[1] On March 31, 2015, the Plaintiff filed his Motion to Remand and Memorandum of Law in Support. Ford's Opposition to the Motion to Remand was filed on April 14, 2015, and Plaintiff's Reply was filed on April 21, 2015.

## STANDARD OF REVIEW

An action may be removed from state court to federal court if it is one over which the district court would have had original jurisdiction. 28 U.S.C. § 1441(a).[2] This Court has original

---

[1] Although basing removal on 28 U.S.C. 1441, Defendant Ford claims that Defendant Ramey's consent is not required because it was "improperly or fraudulent joined," and cites *Jernigan v. Ashland Oil*, 989 F.2d 812 (5th Cir. 1993) for support.

[2] Section 1441 states in pertinent part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have

jurisdiction of all civil actions between citizens of different states or between citizens of a state and citizens or subjects of a foreign state where the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a)(1)-(2). Generally, every defendant must be a citizen of a state different from every plaintiff for complete diversity to exist. Diversity of citizenship must be established at the time of removal. *Higgins v. E.I. Dupont de Nemours & Co.*, 863 F.2d 1162, 1166 (4th Cir.1998).

Section 1446 provides the procedure by which a defendant may remove a case to a district court under Section 1441. Section 1446 requires that "[a] defendant or defendants desiring to remove any civil action from a State court shall file . . . a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). Additionally, Section 1446 requires a defendant to file a notice of removal within thirty (30) days after receipt of the initial pleading. (*Id.*) It is the long settled principle that the party seeking to adjudicate a matter in federal court, through removal, carries the burden of alleging in its notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter. *Strawn et al. v. AT&T Mobility, LLC et al.*, 530 F.3d 293, 296 (4th Cir. 2008); *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) ("The burden of establishing federal jurisdiction is placed upon the party seeking removal.") (citation omitted). Accordingly, in this case, the removing defendant has the burden to show the existence of diversity jurisdiction by a preponderance of the evidence. *See White v. Chase Bank USA, NA.*, Civil Action No. 2:08-1370, 2009 WL 2762060, at *1 (S.D. W.Va. Aug. 26, 2009)

---

> original jurisdiction, may be removed by the defendant or the defendants, to
> the district court of the United States for the district and division embracing the
> place where such action is pending.

28 U.S.C. § 1441(a).

(Faber, J.) (citing *McCoy v. Erie Insurance Co.*, 147 F.Supp. 2d 481, 488 (S.D. W.Va. 2001) (Haden, C.J.)). In deciding whether to remand, because removal by its nature infringes upon state sovereignty, this Court must "resolve all doubts about the propriety of removal in favor of retained state jurisdiction." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999).

"The 'fraudulent joinder' doctrine permits removal when a non-diverse party is (or has been) a defendant in the case . . .. This doctrine effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). The Fourth Circuit sets a high standard for defendants attempting to demonstrate fraudulent joinder: "[T]he removing party must establish either: that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court, or; that there has been outright fraud in the plaintiff's pleading of jurisdictional facts." (*Id.* at 464) (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)) (emphasis in original; brackets removed). Courts may consider the record beyond the pleadings to "determine the basis of joinder" and "whether an attempted joinder is fraudulent." *AIDS Counseling & Testing Centers v. Grp. W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990) (internal quotation marks and citations omitted).

The Fourth Circuit has described the standard for fraudulent joinder as being "even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Hartley*, 187 F.3d at 424. Furthermore, "all legal uncertainties are to be resolved in the plaintiff's favor in determining whether fraudulent joinder exists" and "courts should resolve

4

all doubts about the propriety of removal in favor of retained state court jurisdiction." (*Id.* at 425) (internal quotation marks removed).

      The *Hartley* court went on to explain:

> In all events, a jurisdictional inquiry is not the appropriate stage of litigation to resolve these various uncertain questions of law and fact. Allowing joinder…is proper in this case because courts should minimize threshold litigation over jurisdiction. *See Navarro Sav. Ass'n v. Lee,* 446 U.S. 458, 464 n. 13, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980) ("Jurisdiction should be as self-regulated as breathing; ... litigation over whether the case is in the right court is essentially a waste of time and resources." (internal quotation marks omitted)). Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss. The best way to advance this objective is to accept the parties joined on the face of the complaint unless joinder is clearly improper. To permit extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules.

(*Id.*)

## DISCUSSION

      Defendant Ford contends in its notice of removal that complete diversity exists between the Plaintiff and Ford, that Defendant Ramey was fraudulently joined to defeat diversity jurisdiction, and that the amount in controversy exceeds $75,000. (*See* Document 1 at 3-9.)

      The Plaintiff argues that fraudulent joinder is not present here as there is a distinct possibility he could recover against Defendant Ramey because West Virginia courts have not addressed "whether a commercial seller of used goods is subject to strict product liability," and notes that there is a split in how states and different jurisdictions answer this question. (Document 9 at 5-6, 8-9.) He argues there is a basis to believe the West Virginia Supreme Court would answer the query in the affirmative, citing certain policies supporting West Virginia tort law and its overarching focus on compensating injury. (*Id.* at 9-12.) He stresses that the

5

jurisdictional split, and the fact that no West Virginia court has addressed this particular issue, renders the Defendant's fraudulent joinder argument toothless because "[t]here is far more than a 'glimmer of hope' that Plaintiff could establish a claim against Ramey, so Ramey's citizenship cannot be ignored." (*Id.* at 14)(citing *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 426 (4th Cir. 1999).

In its response in opposition, Ford notes that "[t]he majority rule across the country is that dealers of used goods are not strictly liable for product defects caused by the original manufacturer," and concedes that while "West Virginia law courts have not addressed the precise question whether and when sellers of used goods can be strictly liable for manufacturing defects, it is clear . . . that West Virginia courts would not permit a cause of action against Ramey here." (Document 19 at 5-9.) Ford then devotes the rest of the brief to arguing why other states ruled on the question the way they did, and submits arguments as to why West Virginia would or would not follow suit. (*Id.* at 10-15.)

The Plaintiff replies that the Defendant's response shows that it is unable to argue that there is no possibility that he can recover here, and points out that "courts should resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." (Document 20 at 4.) He then presents argument on why the West Virginia courts would hold Ramey liable under strict liability (*Id.* at 5-6, 9-11), and once again avers that other states and jurisdictions around the country are "fairly evenly divided" on this issue. (*Id.* at 7-8.)

The Court finds that the Plaintiff's motion should be granted. The Court notes that no West Virginia court has ruled on the precise issue necessary to determine whether the Plaintiff has

6

a cause of action against Ramey. Clearly, whether a commercial seller of used goods is subject to strict product liability is an open question in West Virginia.

In light of this, Defendant Ford has failed to carry its burden of demonstrating, by a preponderance of the evidence, this Court's jurisdiction over the matter since Ford cannot show that the Plaintiff fraudulently joined Ramey. In other words, Ford has failed to show that "there is *no possibility* that the [P]laintiff would be able to establish a cause of action against the in-state defendant in state court." *Rapoport*, 198 F.3d at 464 (emphasis in original; bracket added). Additionally, the Court notes that this conclusion is supported by the well-settled principle that "all legal uncertainties are to be resolved in the [P]laintiff's favor in determining whether fraudulent joinder exists," and that this Court "should resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." *Hartley*, 187 F.3d at 425 (internal quotation marks removed; bracket added). This Court should not speculate as to how the West Virginia Supreme Court would rule on the question, particularly considering the parties' arguments. As a question of first impression, principles of federalism support the finding that the matter is best left for determination by the state courts of West Virginia.

## CONCLUSION

WHEREFORE, following careful consideration and for the reasons stated herein, the Court **ORDERS** that the *Motion to Remand* (Document 7) be **GRANTED** and that this matter be **REMANDED** to the Circuit Court of Wyoming County, West Virginia, for further proceedings.

The Court observes that the Plaintiff has requested an award of costs and attorney fees associated with the removal of this action. (*See* Document 9 at 15; Document 20 at 13.) Should the Plaintiff continue to seek such an award, the Court **ORDERS** that he submit calculation of

applicable costs **no later than June 24, 2015**, and that the order remanding this matter be stayed pending resolution of the motion for costs and fees.

Apart from the fee determination, the Court **ORDERS** that all pending motions be **TERMINATED AT MOOT**.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to the Clerk of the Circuit Court of Wyoming County, West Virginia, to counsel of record and to any unrepresented party in this action.

ENTER: June 5, 2015

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA